IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| RYAN GLOVER, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 2:11-cv-3355-TMP |
| ) | |
| BIRCH COMMUNICATIONS, INC., et al. ) | |
| ) | |
| Defendants. ) | |

### DEFENDANTS' VERIFIED MOTION TO COMPEL ARBITRATION

Pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6), and the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, Defendants Birch Telecom of the South, Inc. ("Birch Telecom") and Birch Communications, Inc. ("BCI") both respectfully move this Court for an order compelling Plaintiff into arbitration and staying this case pending the outcome of arbitration.

In support of their Motion, Defendants state and allege as follows:

1.  Birch Telecom and BCI are telecommunications providers as defined by Ala. Code (1975) 6-5-605, 40-8-1, *et seq*. Birch Telecom provides interstate telecommunications services to customers located, *inter alia*, in Alabama. Birch Telecom and BCI are affiliated companies and both are among the companies that comprise the "Birch Communications Companies."

2.  Birch Telecom provided the telephone services to Plaintiff (and the members of the putative class) that are at issue in the present case between January 6, 2005 and June 14, 2011. Glover paid the monthly invoices in full for charges incurred during the months prior to his cancellation of his Birch account.

3.  Birch Telecom sometimes uses the DBA "Birch Communications" and it did so both when it filed the tariffs with the Alabama Public Service Commission that are discussed in

paragraphs 5 and 6 below and when it sent monthly invoices to Mr. Glover.  BCI also sometimes uses that DBA.

4. Under Alabama law, telecommunications providers are required to file tariffs for approval by the Alabama Public Service Commission ("APSC").

5. The telecommunications services that Birch Telecom provides to its customers are governed by three APSC Tariffs and they have been so governed since the APSC approved the three Tariffs and deemed them to have been filed effective April 17, 2008.

6. A true and accurate copy of the applicable APSC Tariffs filed by Birch as approved by the APSC, together with the March 19, 2008 cover letter under which they were submitted, are attached hereto as collective **Exhibit A** (the "APSC Tariff").

7. The APSC Tariff that governs this dispute expressly mandates individual arbitration of the claims asserted in this action.[1]  In relevant part, that Filed Tariff provides: "MANDATORY ARBITRATION OF DISPUTES.  ANY DISPUTE OF ANY KIND BETWEEN THE CUSTOMER AND THE COMPANY, OR ANY EMPLOYEE, AGENT, PRIVY OR AFFILIATED ENTITY OF EITHER PARTY, WILL BE RESOLVED BY FINAL AND BINDING ARBITRATION AS PRESCRIBED IN THIS SECTION.  THE FEDERAL ARBITRATION ACT, NOT STATE LAW, GOVERNS THIS PROCESS, INCLUDING THE ARBITRABILITY OF ANY DISPUTE UNDER THIS TARIFF AND THE REVIEW OF ANY AWARD." Exhibit A at Sheet No. 35.01, § 2.14.

8. By its own terms, that clause provides that it "applies to any dispute, controversy, or claim whether based on contract, tort, equity, statute or any other legal theory." *Id*.

---

[1] The APSC Tariff provides that "[n]o dispute may be … resolved on a class-wide basis."

9. On January 6, 2011, Plaintiff Ryan Glover called Birch in order to open an account so he could receive Birch interstate and local exchange telephone services. During that call, he spoke with Sheryl Collins, a Birch Telecom representative. After she described those services and the rates and other terms and conditions therefor, Mr. Glover asked to open an account in order to receive such telephone services from Birch Telecom. Complaint at ¶¶20, 37.

10. To confirm his acceptance of the terms, Ms. Collins used an automated verification recording system. She transferred him to that system so he could verbally respond to the instructions recorded by Birch therein. The system then recorded the audio contents thereof. A true and accurate copy of the transcript of that recording is attached hereto as **Exhibit B.** A true and accurate copy of the audio recording can be produced if the Court deems it necessary, and in any event is being supplied to opposing counsel with the service copy of this Motion.

11. As Plaintiff expressly acknowledged in his Complaint, Complaint at ¶9, Defendant required that Plaintiff agree to abide by the terms and conditions set forth in its standard Agreement. More specifically, the automated system advised Mr. Glover that the services provided to him would be "provided … in accordance with [Birch's] tariffs on file with the state public service commission and on Birch's website birch.com…." Exhibit B. Later, near the end of that process, the automated system also advised him that "by answering yes to the following you authorize Birch Communications to provide Services … and you agree to terms and conditions specified in the Birch Master Service Agreement and the terms incorporated therein for a 24-month term." *Id.*

12. In response thereto, Mr. Glover said "Yes." *Id.*

13. As he alleges in his Complaint, that standard Agreement to which he agreed to be bound (Defendants refer to it as the Birch Master Services Agreement or "MSA") requires "mandatory arbitration" of his claims. Complaint at ¶19.

14. A true and accurate copy of the MSA (the Birch "Master Services Agreement") is attached hereto as **Exhibit C.**

15. In Paragraph 8 of the MSA, the MSA provides that: "[t]his MSA hereby incorporates the … following website terms of service: (a) for interstate interexchange Voice Services … the terms of service posted at www.birch.com/termsofservice shall apply; …. The Terms of Service, as such documents are updated from time to time, are an integral part of Birch's agreement with Customer." Ex. C at ¶8.

16. In Paragraph 8, the MSA also provides that: "THE REFERENCED 'TERMS OF SERVICE' INCLUDE DISPUTE RESOLUTION PROCEDURES…AMONG OTHER TERMS." *Id.*

17. A true and accurate copy of the Website Terms of Service ("WTOS") for Voice Services – including the Dispute Resolution Procedures and other incorporated "terms of service posted at www.birch.com/termsofservice" – is attached hereto as **Exhibit D.** As set forth on Sheet No. 1, Exhibit D is entitled "Interstate and International Interexchange Services Terms of Service" and that document has been available for download from the www.birch.com website at all material times.

18. The relevant Dispute Resolution Procedures section set forth in Exhibit D at Sheet Nos. 16 and 17 thereof, has not been materially revised from January 6, 2011 to present.

19. Section 4.2.13 of the WTOS (Exhibit D) provides that: "This Section applies to any dispute, controversy or claim, whether based in contract, tort, equity statute or any other legal theory, between the Customer and the Company arising out of, or relating to, any service, product, facilities, charge, advertising, representation, act or omission of the Company, or any other dispute, controversy or claim arising from the relationship between the parties that either the Customer or the Company has against the other, regardless of the date of accrual and even if the dispute, controversy or claim arises after service has terminated."  Ex. D at Sheet No. 16.

20. Section 4.2.13 also provides that:  "BY ORDERING AND/OR CONTINUING SERVICES PROVIDED IN THIS TARIFF, THE CUSTOMER AGREES THAT ANY DISPUTE WILL BE RESOLVED BY THE DISPUTE RESOLUTION PROCESS DESCRIBED HEREIN AND NOT BY A JUDGE OR JURY IN COURT." *Id.* at Sheet No. 17.

21. Section 4.2.13 also provides that:  "MANDATORY ARBITRATION OF DISPUTES.  ANY DISPUTE OF ANY KIND BETWEEN THE CUSTOMER AND THE COMPANY, OR ANY EMPLOYEE, AGENT, PRIVY OR AFFILIATED ENTITY OF EITHER PARTY, WILL BE RESOLVED BY FINAL AND BINDING ARBITRATION AS PRESCRIBED IN THIS SECTION.  THE FEDERAL ARBITRATION ACT, NOT STATE LAW, GOVERNS THIS PROCESS, INCLUDING THE ARBITRABILITY OF ANY DISPUTE UNDER THIS TARIFF AND THE REVIEW OF ANY AWARD." *Id*.

22. Section 4.2.13 also provides that:  "The arbitration will be conducted by and under the then-applicable commercial arbitration rules of the American Arbitration Association…."  *Id.*

23. The AAA commercial arbitration rules now in-effect include Rule 7 thereof, entitled "Jurisdiction" which provides in relevant part that: "(a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement" and "(b) The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract…." A true and accurate copy of "R-7. Jurisdiction" from the "Commercial Arbitration Rules" of the American Arbitration Association, effective June 1, 2009 and thereafter, is attached hereto as **Exhibit E.** The entire set of AAA Commercial Arbitration Rules, effective June 1, 2009 and thereafter, is available for download at: http://www.adr.org/sp.asp?id=22440.

24. Section 4.2.13 of the WTOS also provides: "No Dispute may be joined with another lawsuit, claim, dispute or arbitration brought by any other person, or resolved on a class-wide basis." Ex. D at Sheet No. 17.

Each of the grounds for Defendants' Motion are more fully set forth in Defendants' Memorandum in Support of this Motion, which is submitted contemporaneously herewith and is incorporated herein by this reference.

WHEREFORE, Defendants respectfully request the Court grant their Motion to Compel Arbitration and require Plaintiff to submit to arbitration of his claims on an individual basis as set forth in the APSC Tariff, or alternatively as set forth in the MSA and incorporated WTOS. Defendants also respectfully request that this Court stay all proceedings in this case until Plaintiff complies with his obligation to arbitrate his claims (and any arbitrability issues that arise therewith) on an individual basis.

        Respectfully submitted,

          *s/ Michael R. Pennington*
Michael R. Pennington
Bradley Arant Boult Cummings, llp
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203
205.521.8000
mpennington@babc.com


SPENCER FANE BRITT & BROWNE LLP
Barry L. Pickens
Patrick J. Whalen
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
(816) 474-8100 (Telephone)
(816) 474-3216 (Facsimile)
bpickens@spencerfane.com
pwhalen@spencerfane.com

*Attorneys for Defendants Birch Telecom of the South, Inc. and Birch Communications, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the10th day of February, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System which will send an electronic notification of such filing to the following counsel of record:

Andrew P. Campbell, Esq.
Jason R. Smith, Esq.
Leitman, Siegal, Payne & Campbell, P.C.
420 North 20th Street, Suite 2000
Birmingham, AL 35203

             *s/ Michael R. Pennington*
            OF COUNSEL

## VERIFICATION

I, Christopher J. Bunce, state that I am over 18 years of age and of sound mind to make the statements herein, and that I have personal knowledge of the facts I declare herein. I am the Vice President Legal and General Counsel of Birch Communications, Inc. and its affiliated companies. I have reviewed the facts alleged in the above-Verified Motion and to the best of my knowledge, the facts set forth therein are true.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

February 10, 2012

_____
Christopher J. Bunce