IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| RYAN GLOVER, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 2:11-cv-3355-TMP |
| ) | |
| BIRCH COMMUNICATIONS, INC., et al. ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF
## MOTION TO COMPEL ARBITRATION

COME NOW defendants Birch Telecom of the South, Inc. ("Birch Telecom") and Birch Communications, Inc. ("BCI") (collectively, Birch Telecom and BCI are referred to herein as "Birch") and in support of their Motion to Compel Arbitration, state as follows.

## INTRODUCTION

Birch Telecom provides interstate telecommunications services to customers located, *inter alia*, in Alabama. Birch Telecom provided the telephone services to Plaintiff that are at issue in the present complaint (and to the putative class).[1] As set forth below, these services were governed by an Alabama Public Service Commission Tariff – the "APSC Tariff." This APSC Tariff exclusively controls both the rates and the terms and conditions of the services provided thereunder and it expressly includes a broad, mandatory arbitration provision that applies to all customer claims.

---

[1] In his original Complaint, Plaintiff named only BCI as defendant, but did not sue Birch Telecom. He later filed his Amended Complaint naming Birch Telecom and realleging all claims against it by incorporation of the original complaint. Plaintiff's apparent confusion may have been caused by the fact that Birch Telecom and its parent, BCI, both sometimes use "Birch Communications" as their DBA.

WA 3324289.2

The "filed tariff doctrine" (or "filed rate doctrine") applies when state law creates a state agency and a statutory scheme under which the agency determines the rates and conditions for services provided thereunder.  Under the doctrine, filed tariffs become the law that governs a utility's relationship with its customers and have the full force and effect of law until suspended or set aside.  The obligations of a utility that is providing services to its customers under a filed tariff cannot exceed its duties detailed in that tariff.  Similarly, aggrieved customers cannot pursue their alleged claims in a manner that is inconsistent with the filed tariff.  Consequently, the filed tariff doctrine prohibits a customer from proceeding against Birch in violation of the filed tariff's mandatory arbitration provisions.

In addition to the APSC Tariff, Plaintiff also agreed that he would arbitrate his claims as set forth in the Birch Master Services Agreement ("MSA") which he expressly agreed would govern the account he created with Birch.  Defendants' Motion at ¶¶ 13-20 and Exs. C, D thereto.  As he acknowledges in both his complaints, Defendants required Plaintiff to agree to abide by the terms and conditions set forth in the MSA (which his complaint refers to as a Standard Service Agreement).  Complaint at ¶9.  As he also acknowledged therein, the MSA "impose[s] mandatory arbitration" of his claims.  *Id.* at ¶19.  However, he also asserts an erroneous legal conclusion – that, because he did not physically *sign* that Agreement, he cannot be bound by it, *id.*, for reasons he does not explain.  In fact, as a matter of law, he is bound by it both because he verbally agreed, when he first established service with Birch, to be bound by all terms incorporated into the MSA, or in the alternative, he agreed to be bound by the terms of the MSA and incorporated terms by using Birch services after being advised that his account was governed by the MSA and terms incorporated therein.  Since the arbitration agreement is in writing, plaintiff is bound by his assent even without his physical signature thereon.

Thus, Plaintiff is required to arbitrate his individual claims as expressly provided in the tariff. Alternatively, Plaintiff is required to arbitrate his individual claims with Defendants pursuant to the terms of the agreement that governs the parties' relationship.

**APPLICABLE LEGAL STANDARDS: THE FEDERAL ARBITRATION ACT REQUIRES THAT THIS COURT RIGOROUSLY ENFORCE THE ARBITRATION AGREEMENTS AT ISSUE AND RESOLVE ANY DOUBTS IN FAVOR OF ARBITRATION.**

The Federal Arbitration Act ("FAA") "reflects a 'liberal federal policy favoring arbitration,' [*AT&T Mobility, LLC v. Concepcion*, -- U.S. --, 131 S.Ct. 1740, 1745 (2010)] … and requires courts to 'rigorously enforce agreements to arbitrate' according to their terms." *Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205, 1210 (11th Cir. 2011) (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221, (1985)). The Supreme Court has emphasized that Courts should refer a matter for arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steel Workers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). Congress enacted the FAA to "reverse the long-standing judicial hostility to arbitration agreements, . . . to place these agreements upon the same footing as other contracts, . . . and to manifest the liberal federal policy favoring arbitrations." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). Thus, in "interpreting an arbitration provision, 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" *The Dunes of GP, L.L.C. v. Bradford*, 966 So.2d 924, 927 (Ala.2007) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).

A "motion to compel arbitration should not be denied 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted

dispute.'" *The Dunes of GP*, 966 So.2d at 927 (quoting *Ex parte Colquitt*, 808 So.2d 1018, 1024 (Ala.2001); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960)). "After a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question." *Jim Burke Auto, Inc. v. Beavers*, 674 So.2d 1260 (Ala. 1995); *see also Elizabeth Homes, L.L.C. v. Cato*, 968 So.2d 1 (Ala. 2007).

### I. THE FILED TARIFF DOCTRINE REQUIRES PLAINTIFF TO ARBITRATE HIS CLAIMS AGAINST DEFENDANTS.

#### A. The Alabama Public Service Commission Tariff.

As set forth in Defendants' Motion, Birch Telecom and BCI are telecommunications providers as defined by Ala. Code (1975) 6-5-605, 40-8-1, *et seq*. Defendants' Motion at ¶1. Under Alabama law, telecommunications providers are required to file tariffs for approval by the Alabama Public Service Commission ("APSC"). *Id.* at ¶4. The services at issue herein were provided by Birch Telecom. *Id.* at ¶2. A true and accurate copy of the governing APSC Tariff filed by Birch and approved by the APSC is attached as Exhibit A to Defendants' Motion (hereafter, the "APSC Tariff").

As set forth in Defendants' Motion, the APSC Tariff that governs this dispute expressly mandates arbitration of the claims asserted in this action. In relevant part, the APSC Tariff provides:

> MANDATORY ARBITRATION OF DISPUTES. ANY DISPUTE OF ANY KIND BETWEEN THE CUSTOMER AND THE COMPANY, OR ANY EMPLOYEE, AGENT, PRIVY OR AFFILIATED ENTITY OF EITHER PARTY, WILL BE RESOLVED BY FINAL AND BINDING ARBITRATION AS PRESCRIBED IN THIS SECTION. THE FEDERAL ARBITRATION ACT, NOT STATE LAW, GOVERNS THIS PROCESS, INCLUDING THE ARBITRABILITY OF ANY DISPUTE UNDER THIS TARIFF AND THE REVIEW OF ANY AWARD.

Defendants' Motion, Ex. A (APSC Tariff) at Sheet No. 35.01, § 2.14. The mandatory arbitration "applies to any dispute, controversy, or claim whether based on contract, tort, equity, statute or any other legal theory." *Id.*

**B.    Under The Filed Rate Doctrine, the Alabama Public Services Commission Tariff Constitutes the Law Governing the Parties' Relationship And The Federal Arbitration Act Requires Its Arbitration Clause To Be Enforced.**

Generally, the "filed rate doctrine provides that once a filed rate is approved by the appropriate governing regulatory agency, it is *per se* reasonable and it is unassailable in judicial proceedings." *Bell South Telecommunications v. Alabama Pub. Serv. Comm'n*, 987 So. 2d 1079, 1086 (Ala. 2007). Filed tariffs "become 'the law' and exclusively govern the rights and liabilities of the Carrier to the customer." *Pfeil v. Sprint Nextel*, 284 Fed. Appx. 640, 642 (11th Cir. 2008). Without regard to a claimant's lack of subjective knowledge of the tariff's contents, a claimant is precluded from proceeding in court in contravention of the tariff's terms. *Mobley v. AT&T Corp.*, 717 So.2d 367, 368 (Ala. 1998). Instead, "the customer's knowledge of this rate is conclusively presumed." *Mobley*, 717 So. 2d at 368.

"As it applies in the telecommunications industry, the filed rate doctrine dictates the rates a carrier charges its customers once filed with, and approved by the FCC, become 'the law' and exclusively govern the rights and liabilities of the carrier to the customer." *Hill v. Bellsouth Telecommunications, Inc.*, 364 F.3d 1308, 1315 (11th Cir. 2004) (*citing Evanns v. AT&T Corp.*, 229 F.3d 837, 840 (9th Cir. 2000). As the Eleventh Circuit explained in *Hill*, the tariff's terms of service cannot be circumvented, disregarded, or altered:

> Not only is a carrier forbidden from charging rates other than that set out in the filed tariff, the customers are also charged with notice of the terms and rates set out in the filed tariff and may not bring an action against a carrier that would invalidate, alter, or add to the terms of the filed tariff."

*Id*. at 1315.  The APSC Tariff's arbitration clause is thus not merely a binding contract, it also constitutes the **governing law** regulating plaintiffs' claims against defendant.

The FAA requires that this Court enforce the arbitration provision in the APSC Tariff filed by Birch because filed tariffs fall squarely within the FAA's pro-arbitration policy.  *Metro East for Conditioning Health v. Qwest Comm's, Int'l*, 294 F.3d 924, 926 (7th Cir. 2002).

> "An agreement for purposes of Section 3 [of the FAA] means no more than an offer and acceptance that produces a legally binding document.  Tariffs, like contracts, have that quality.  The tariff is an offer that the customer accepts by using the product.  The terms have legal effect; indeed, by virtue of federal law the tariff is more conclusive than a contract and is said to have the status of a regulation, … though a tariff also may be enforced through a suit, just as contract may be enforced.  No surprise that we refer to tariffs as a species of contract."

*Id.* (citing *Cahnmann v. Sprint*, 133 F.3d 484 (7th Cir. 1998)).  *See also Powell v. AT&T Mobility*, 742 F. Supp. 2d 1285, 1288 (N.D. Ala. 2010).

"To the extent that [plaintiff] argues the arbitration is unfair or unjust because it interferes with some other federal objective; it runs smack into the filed rate doctrine (sometimes called the filed tariff doctrine because it covers terms as well as rates.)"  *Metro East*, 294 F.3d at 927.  As a matter of law, an arbitration provision between a telephone service provider and customer is not void or unconscionable based upon a particular customer's claim that the provision deprived him of meaningful recourse and recovery, without more.  *Matthews v. AT&T Operations*, 764 F. Supp. 2d 1272, 1280 (N.D. Ala. 2011).[2]

---

[2] Also as a matter of law, this clause's prohibition of class actions does not render it unconscionable.  *AT&T Mobility, LLC v. Concepcion*, -- U.S. --, 131 S.Ct. 1740, 1748 (2010).  In *Cruz v. Cingular Wireless, LLC*, the Eleventh Circuit recognized that, in light of *Concepcion,* this issue "does not depend on a construction of" state law and noted  any state law that "would require the availability of classwide arbitration procedures … in spite of the parties' agreement to submit all disputes to arbitration on an individual basis" would be preempted.  648 F.3d 1205, 1215 (11th Cir. 2011).

C.     **This Dispute Falls Within the Tariff's Arbitration Provision.**

There can be no doubt that Plaintiffs' claims all fall within the broad scope of the APSC Tariff's arbitration provision.  It applies to "any dispute, controversy, or claim, whether based in contract, tort, equity, statute or other legal theory between the customer and the company arising out of or relating to any service, products, facilities charge, advertising, representation, act, or omission of the company or any other dispute, controversy, or claim arising from the relationship between the parties."  Defendants' Motion, Ex. A at Sheet No. 35.  Given the broad scope of the clause and the presumption of arbitrability that applies under the FAA, *Moses H. Cone*, 460 U.S. at 24–25, this Court must enforce the arbitration clause in the APSC Tariff by compelling Plaintiff to arbitrate all claims herein.

D.     **Both Birch Telecom and BCI May Invoke The APSC Tariff's Arbitration Provision.**

State law "is applicable to determine which contracts" that contain arbitration clauses may be enforced by nonparties to the arbitration agreement.  *Arthur Anderson, LLP v. Carlisle*, 556 U.S. 624, 129 S.Ct. 1896, 1902 (2009).  In the absence of an express limit in the arbitration clause, Alabama state law liberally permits nonparties to enforce arbitration agreements against a party thereto if the nonparties' claims are "intertwined" with the claims of another party.  *E.g., Green Tree-AL, LLC v. White*, 55 So.2d 1186, 1192 (Ala. 2010) (reversing denial of motion to compel arbitration); *Cartwright v. Maitland*, 30 So.2d 405, 412 (Ala. 2009); *see Matthews v. AT&T Operations, Inc.*, 764 F.Supp.2d 1272 (N.D. Ala. 2011).

"The [Alabama Supreme] Court's several decisions on this subject make it clear that estoppel applies in a dispute involving an arbitration agreement when the language of the arbitration agreement is not specifically limited to the signatories of the agreement and is, instead, broad enough to encompass disputed claims between a signatory and a nonsignatory."

7

*Cartwright*, 30 So.2d at 412.  In *Cartwright*, the Alabama Supreme Court held that persons who were not required to sign the contract at issue (non-signatories) may nevertheless invoke the contract's arbitration clause if the clause in the contract is broad enough to encompass a dispute between them and one or more signatories.  30 So.2d at 410-11.

Similarly, in *Matthews v. AT&T Operations, Inc*., this Court compelled the plaintiff to arbitrate his claims against a telecommunications provider with whom plaintiff had contracted (BellSouth Telecommunications, Inc.), as well as the parent company thereof (AT & T Operations, Inc.) and a third defendant.  764 F.Supp.2d 1272, 1284 (N.D. Ala. 2011).  The Court adopted the magistrate's report and recommendation and compelled arbitration based upon a clause that included "affiliates" within its scope.  *Id.*  The clause there said that "references to 'AT & T', 'you', and 'us' include our respective subsidiaries [and] affiliates...."  *Id.*  The Court held that this clause also entitled  AT&T Operations, Inc. to enforce the mandatory arbitration clause, in addition to BellSouth.  *Id.*

Like the arbitration clauses in *Cartwright* and *Matthews*, the clause in the APSC Tariff also provides that "ANY DISPUTE OF ANY KIND BETWEEN THE CUSTOMER AND THE COMPANY, OR **ANY … PRIVY OR AFFILIATED ENTITY OF EITHER PARTY**, WILL BE RESOLVED BY FINAL AND BINDING ARBITRATION AS PRESCRIBED IN THIS SECTION…."  Defendants' Motion, Ex. A at Sheet No. 35.01.  Thus, "the arbitration provision on its face encompasses disputes arising between" plaintiff and any "privy" or "affiliate" of Birch Telecom.  *Cf. Cartwright*, 30 So.2d at 411.  BCI may thus enforce that clause in the APSC Tariff; that is especially true under Alabama law where, as here, the "nonsignatory is the party seeking to compel arbitration" – not to resist it.  *Id.* (citing *Ex parte Stamey*, 776 So.2d 85, 89

8

(Ala.2000)).  This Court should compel Plaintiff to arbitrate his individual claims with both Defendants.

## II.  THE PARTIES' WRITTEN AGREEMENT ALSO REQUIRES THAT PLAINTIFF ARBITRATE HIS CLAIMS AGAINST DEFENDANTS.

As set forth in Defendants' Motion, the Birch representative with whom Glover spoke when he signed up to receive these services used a recorded verification program to record Glover's assent to the parties' agreement that he would be bound by both the filed tariff and the Birch Master Services Agreement.  Glover was expressly advised that Defendant would provide the services "in accordance with [Birch's] tariffs on file with the state public service commission and on Birch's website birch.com…."  Defendants' Motion at ¶¶10-11 & Ex. B.  He was then advised that "by answering yes to the following you authorize Birch Communications to provide Services … and you agree to terms and conditions specified in the Birch Master Service Agreement and the terms incorporated therein for a 24-month term."  *Id.*, Ex. B.  In response to that instruction, the transcript and recording reflect that Mr. Glover said "Yes."  *Id.*

Glover's verbal acceptance of those terms binds him to all terms set forth in the "Birch Master Services Agreement" and "the terms incorporated therein."  On virtually identical facts, the Alabama Supreme Court so held in *Memberworks, Inc. v. Yance*, 899 So.2d 940, 942-43 (Ala. 2004) (reversing order denying motion to compel arbitration).  In *Memberworks*, the Alabama Supreme Court held that the movant had presented sufficient evidence of the existence of a written agreement to arbitrate by attaching "the transcript of the telephone call between [the nonmovant plaintiff] and the operator…."  899 So.2d at 942-43.  There, that transcript showed plaintiff "affirmatively answered 'okay' when the operator told him that he was going to be enrolled in movant's program."  *Id.* at 943.  The Supreme Court thus "disagree[d] with the trial court's conclusion that this evidence [was] insufficient to establish the existence of a contract…."

9

*Id.* Mr. Glover's verbal expression of assent (here, his "Yes" reply) binds him to the terms in the Birch Master Services Agreement (and all incorporated terms) just as surely as the customer's verbal assent did in *Yance*.

As set forth in Defendants' Motion, Glover also accepted the website terms of service that were incorporated into the Birch MSA by continuing to use and pay for his Birch account for several months after the telephone call in which he was advised those terms would govern his account. Defendants' Motion, ¶¶ 2, 20 & Ex. D. Birch expressly invited Glover's acceptance by such conduct and even advised him that such conduct would constitute his acceptance of the Master Services Agreement and its incorporated terms. Defendants' Motion, at ¶¶ 14, 16 & Ex. C (Section 4.2.13: "BY ORDERING AND/OR CONTINUING SERVICES PROVIDED IN THIS TARIFF, THE CUSTOMER AGREES THAT ANY DISPUTE WILL BE RESOLVED BY THE DISPUTE RESOLUTION PROCESS DESCRIBED HEREIN AND NOT BY A JUDGE OR JURY IN COURT"). In his Complaint, Glover acknowledges that he "received telephone service from defendants" and paid for Birch service during the period between his telephone enrollment in January 2011 and the date when he "cancelled his account in or around May 2011." Complaint at ¶¶7, 20.

His acceptance and use of the benefits of that account and those services also constituted his acceptance of the MSA and the incorporated website terms of service ("WTOS"). *See Memberworks*, 899 So.2d at 942-43 (citing *Lanier Worldwide, Inc. v. Clouse*, 875 So.2d 292, 296 (Ala.2003); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Kilgore,* 751 So.2d 8, 11 (Ala.1999)); *see also, Southern United Fire Ins. Co. v. Howard*, 775 So.2d 156, 162-63 (Ala. 2000) (plaintiff "accepted and acted upon" insurance policy which contained arbitration provision "by paying premiums, renewing the policy, and submitting a claim"); *Battels v. Sears*

10

*Nat'l Bank*, 365 F.Supp.2d 1205, 1214 (M.D. Ala. 2005) ("use of a credit card" is "sufficient to signal assent" to written terms for credit card account); *Freeman v. Sterling Jewelers, Inc.*, No. 1:08CV 154-SRW, 2008 WL 3890498 (M.D. Ala. Aug. 18, 2008) at *3-4.

The Alabama Supreme Court has long held that written arbitration provisions are binding if, as here, the parties have incorporated them by reference into the agreement. *E.g., Woodmen of the World Life Ins. Society v. Harris*, 740 So.2d 362, 367-68 (Ala. 1999) (holding that arbitration provision added by unilateral amendment to defendant's Constitution was binding on plaintiff where Constitution and "any amendments thereto" was incorporated by reference into the agreement, noting the Alabama Supreme Court "has long recognized that a contract may incorporate the terms of another document by reference"). The MSA unmistakably incorporates the WTOS therein, and like *Harris,* incorporates subsequent amendments thereto. Defendants' Motion at ¶¶15, 17-18 & Exs. C, D thereto.

Under the FAA, black-letter law also establishes that a written arbitration agreement is binding upon the parties if it is incorporated into a valid agreement between them, even if one of the parties has signed neither the arbitration clause itself nor their contract. *E.g., Caley v. Gulfstream Aerospace Corp.*, 428 F. 3d 1359, 1369 ( 11th Cir. 2005) ("We readily conclude that no signature is needed to satisfy the FAA's written agreement requirement"); *Campbell v. Pilot Catastrophe Servs*., No. 10-0095-WS-B, 2010 WL 3306935 (S.D. Ala. Aug. 19, 2010) ("It is well-settled that [a] signature is not necessary for an arbitration agreement to be valid").

As set forth in Defendants' Motion, the MSA directly references the Dispute Resolution Procedures it incorporates from the Website Terms of Service ("WTOS"). Defendants' Motion, Ex. C at ¶8 ("THE REFERENCED 'TERMS OF SERVICE' INCLUDE DISPUTE RESOLUTION PROCEDURES")(capitalization in original). The Dispute Resolution

11

Procedures set out in Section 4.2.13 of the WTOS broadly provide for the arbitration of all disputes. The claims in this lawsuit fall squarely within the scope of that clause.

Further, Section 4.2.13 also provides that the AAA commercial arbitration rules will apply to this arbitration clause. It provides that "[t]he arbitration will be conducted by and under the then-applicable commercial arbitration rules of the American Arbitration Association…." Because the AAA commercial arbitration rules include a delegation of jurisdiction to the arbitrator, *see* AAA Rule 7 (attached as Ex. E to the Motion), if Plaintiff seeks to raise a challenge to the "arbitrability" of his claims, then he must do so only within the arbitration and not in these judicial proceedings. *CitiFinancial Corp., L.L.C. v. Peoples*, 973 So.2d 332, 339-40 (Ala. 2007) (approving *Terminix Int'l Co. v. Palmer Ranch Ltd. Partnership*, 432 F.3d 1327, 1332 (11th Cir. 2005)). Where the parties have agreed that AAA rules apply, "issues of arbitrability are to be decided by the arbitrator." *Id.* at 340; *see also Joe Hudson Collision Center v. Dymond*, 40 So.3d 704, 710 (Ala. 2009).

Finally, for exactly the same reasons set forth above in Defendants' discussion of the reasons BCI can invoke the APSC Tariff, Section I(D) *supra*, BCI is also entitled under Alabama law to invoke the Dispute Resolution Procedure that is set forth in Section 4.2.13 of the WTOS. In fact, the relevant language is identical. Accordingly, even if the Court were to conclude that arbitration should not be compelled based upon the APSC Tariff, Plaintiff would still be obligated to arbitrate his individual claims against both Defendants pursuant to the terms of the parties' arbitration agreement as set out in the MSA and its incorporated terms.

## **CONCLUSION**

Under controlling Federal and Alabama law, plaintiffs are required to abide by the governing APSC Tariff and arbitrate claims filed in this matter. Accordingly, Defendants respectfully request the Court grant their Motion to Compel Arbitration and require Plaintiff to

submit to arbitration of his claims on an individual basis as set forth in the APSC Tariff, or alternatively as set forth in the MSA and incorporated WTOS. Defendants respectfully ask this Court to stay all proceedings in this case until Plaintiff complies with his obligation to arbitrate his claims (and any arbitrability issues that arise therewith) on an individual basis.

Respectfully submitted,

*s/ Michael R. Pennington*
Michael R. Pennington
Bradley Arant Boult Cummings, llp
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203
205.521.8000
mpennington@babc.com


SPENCER FANE BRITT & BROWNE LLP
Barry L. Pickens
Patrick J. Whalen
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
(816) 474-8100 (Telephone)
(816) 474-3216 (Facsimile)
bpickens@spencerfane.com
pwhalen@spencerfane.com

*Attorneys for Defendants Birch Telecom of the South, Inc. and Birch Communications, Inc.*

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 10th day of February, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System which will send an electronic notification of such filing to the following counsel of record:

Andrew P. Campbell, Esq.
Jason R. Smith, Esq.
Leitman, Siegal, Payne & Campbell, P.C.
420 North 20th Street, Suite 2000
Birmingham, AL 35203

                                            *s/ Michael R. Pennington*
                                            OF COUNSEL